**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RACHEL M. CAUDLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-480-JHP-KEW |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Rachel M. Caudle (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 47 years old at the time of the ALJ's decision.  Claimant completed his high school education with special education classes.  Claimant has worked in the past as a home attendant, deli worker, and CNA.  Claimant alleges an inability to work beginning October 15, 2010 due to limitations resulting from hyperlipidemia, chondromalacia, psoriasis, sleep apnea, and back pain.

**Procedural History**

On December 3, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 4, 2015, Administrative Law Judge ("ALJ") Harold Davis conducted an administrative hearing by video with Claimant appearing in Fayetteville, Arkansas and the ALJ presiding from Fort Smith, Arkansas. On April 4, 2015, the ALJ issued an unfavorable decision. On August 11, 2016, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to reach a proper determination at step five; and (2) failing to properly consider the medical source evidence.

### Step Five Determination

In his decision, the ALJ determined Claimant suffered from the

severe impairments of hypertension, degenerative joint disease of her knees, chondromalacia patella (right), status postoperative, seizure disorder, obesity, and depression. (Tr. 13). The ALJ concluded Claimant retained the RFC to perform light work except she could not drive or work at unprotected heights or around dangerous machinery. She was also limited by the ALJ to simple tasks and simple instructions and she could only have incidental contact with the public. (Tr. 16).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of warehouse checker, a content inspector, and production assembler/general assembler, all of which were found to exist in sufficient numbers in the national and regional economies. (Tr. 22). As a result, the ALJ found Claimant was not under a disability from October 15, 2010 through the date of the decision. Id.

Claimant contends the ALJ failed to include all of his limitations in the hypothetical questions posed to the vocational expert. She first asserts the ALJ should have included a limitation of no overhead lifting or reaching posed by Dr. Christopher Deloache, an orthopedic surgeon who rendered care to Claimant. Dr. Deloache authored an abbreviated RFC assessment on January 22, 2015. He concluded Claimant would require four or more unscheduled work breaks in an eight hour workday due to physical restrictions. (Tr.

1043). He also determined Claimant should avoid all exposure to extreme cold and heat as well as gases, poor ventilation, and hazards such as machinery and heights. Although the narrative basis for his restrictions is almost completely illegible, he does state that his opinions are supported by objective findings and clinical observations and covered the time period from February 19, 2010 or January 2, 2015 "and continuing." (Tr. 1044).

Dr. Deloache also completed a medical source statement which limited Claimant to frequent lifting/carrying of ten pounds; occasional lifting/carrying of ten pounds; standing/walking for two hours in an eight hour workday and continuously for 1/2 hour before a break; sitting for six hours in an eight hour workday and continuously for 1-2 hours before a break; limited pushing/pulling in the lower extremities; a requirement for five or more work breaks in an eight hour workday; and a restriction to 3-6 hours for work activities in an normal workday caused by the totality of her symptoms. Dr. Deloache also restricted Claimant to less than two hours out of an eight hour workday for climbing, balancing, squatting, kneeling, crouching, bending, and stooping. She could reach in all directions and grip for two hours out of an eight hour workday; and handle, finger, and feel for six out of an eight hour workday. (Tr. 1045-46). His objective justification of the limitations is, again, very difficult to read but includes knee

problems as well as neck and lumbar issues. (Tr. 1045). He also noted that Claimant underwent right knee arthroscopy under his direction in May of 2014. (Tr. 1047).

The ALJ gave Dr. Deloache's opinion "little weight" because (1) it "appears" to the ALJ that Dr. Deloache's findings are partially based on Claimant's reports since he had not seen her since June 10, 2014, where Claimant reported she was improved with tenderness; (2) no evidence showed Claimant returned for an appointment in one month as directed by Dr. Deloache; and (3) Dr. Deloache based some of his findings on impairments in the cervical and lumbar spine with no evidence he treated Claimant for those conditions. (Tr. 21).

Claimant's first contention references a finding by Dr. Deloache that she could engage in "no overhead lifting or reaching, which is endorsed by Dr. Trinidad. . . ." at Tr. 443 and 447 in the transcript. *Cl. Opening Brief at p. 6*. No where in Dr. Deloache's RFC assessment or source statement does he completely bar Claimant from overhead lifting or reaching. Instead, he found Claimant could reach in all directions for two hours in an eight hour workday. (Tr. 1045). This may still conflict with the ALJ's RFC but is not accurate in Claimant's representations in the briefing. Also, page 443 in the transcript is a mammogram reading and page 447 is the results of physical examination concentrating on GI bleeding – neither of which were authored by Dr. Deloache.

7

In evaluating the ALJ's reasons for rejecting Dr. Deloache's findings, the determination that he relied upon Claimant's representations is rank supposition which does not form a supported basis for rejecting the opinion of a treating physician. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004)("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints . . . ."). The ALJ's notation that Dr. Deloache had not seen Claimant since June 10, 2014 is belied by the fact that he noted his assessment covered January 22, 2015 "date and continuing." (Tr. 1044). If this created a conflict in the evidence on an issue of such importance that the ALJ relied upon it, at least in part, to reject the opinion of a treating physician, he should have recontacted the physician to ascertain the status of Claimant's treatment. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)("We will seek . . . clarification from your medical source when the report from your medical source contains a conflict . . . that must be resolved."). Similarly, the findings regarding cervical and lumbar function should also receive clarification.[3] In fact, the entirety of Dr. Deloache's narrative notes on the

---

[3] This Court also notes that problems with Claimant's neck and back are not devoid from the record. Dr. Ashok Kache noted that Claimant suffered from "some limitations in her back and neck." (Tr. 465).

objective basis for the restrictions he found requires translation for proper consideration.

The failure to develop this opinion evidence was not harmless since the totality of Dr. Deloache's restrictions would have affected the overall exertional level and associated jobs Claimant could have performed. All of the representative jobs identified by the ALJ required frequent reaching, fingering, and/or handling which is directly contrary to the restrictions found by Dr. Deloache. (Warehouse checker (Checker I) DOT #222.687-010; Production Assembler DOT #706.687-010; Content Inspector DOT #522.667-010). On remand, the ALJ shall re-evaluate the opinion of Dr. Deloache after recontacting him to resolve the conflict in the record.

Claimant also contends the ALJ failed to properly evaluate the opinion of Dr. Ashok Kache, a consultative examining physician. Dr. Kache concluded Claimant suffered from heart disease cardiomyopathy with enlarged heart; borderline diabetes mellitus; seizure disorder; arthritic symptoms, knees especially on the right side, back, left hand and thumb; anxiety/depression; hemorrhoids; and psoriasis. He noted that Claimant showed some limitations in her back and neck. She was able to take her shoes and socks off. She could stand upright but had difficulty with heel and toe standing or walking. Dr. Kache noted that Claimant had trouble getting on and off the examination table without a foot stool. Her gait was noted as slow

with decreased arm swing and stride length. She reported to Dr. Kache that she was a slow walker but had not fallen, although she occasionally used a cane or held onto something for balance.

Her neurological examination was largely normal, although Dr. Kache noted that Claimant's left handgrip was decreased because of the left thumb MP joint being tender to palpation "quite markedly." Sensory examination showed no deficits. (Tr. 465). He also found Claimant could effectively oppose the thumb to fingertips and could effectively grasp tools such as a hammer. The question posed on the form as to whether Claimant could manipulate small objects is left unanswered. (Tr. 468).

The ALJ partially noted Dr. Kache's examination results, relating that his physical examination of Claimant demonstrated no cyanosis, clubbing or edema and 2+ pedal pulses. (Tr. 18). Dr. Kache's opinion was neither weighed by the ALJ nor were the restrictions he noted expressly considered in the RFC. The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-

(6). No reasons were given for failing to consider Dr. Kache's examination opinion, in particular the portions which supported a finding of disability. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007)(An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). On remand, the ALJ shall remedy this deficiency.

Claimant next challenges the ALJ's consideration of the opinion of Dr. Cara Hartfield, a consultative clinical psychologist. Dr. Hartfield examined Claimant on May 15, 2015. She diagnosed Claimant with Major Depressive Episode Single Episode Chronic, Moderate and estimated her GAF at 50. She concluded that Claimant's mental impairments "interfere markedly with her day to day adaptive functioning"; her "capacity to communicate and interact in an intelligible and effective manner is moderately affected"; her "capacity to cope with typical mental/cognitive demands of basic work-like tasks is moderately affected"; her "ability to attend and sustain concentration on basic tasks is mildly affected"; her "capacity to sustain persistence in completing tasks is moderately affected; and her "capacity to complete work-like tasks within an acceptable timeframe is mildly affected." (Tr. 336). She also was unable to manage funds without

assistance. (Tr. 337).

Dr. Hartfield also completed a mental source statement dated June 22, 2012. She found Claimant was moderately limited in the areas of the ability to make judgments on simple work-related decisions, ability to make judgments on complex work-related decisions; and responding appropriately to usual work situations and to changes in a routine work setting. Dr. Hartfield also found Claimant to experience "moderate severity of her depressive symptoms as well as an observed lack of willingness to risk failure" (Tr. 327-28). Her "moderate depression will lead to difficulty adjusting to changes in her routine." (Tr. 328).

The ALJ accurately related Dr. Hartfield's findings in his decision. (Tr. 19). He gave her opinions "more weight" than the opinions of the reviewing state agency consultants on mental issues. (Tr. 21). He did not, however, state the level of that weight. He also did not include some of Dr. Hartfield's restrictions in his RFC, creating a question of which findings he gave significant weight and which he did not. For instance, Dr. Hartfield found Claimant's depression would cause her difficulty in adjusting to changes in her routine. She also determined Claimant could not handle funds. No restriction in the RFC accommodates these findings.

Additionally, the hypothetical questioning of the vocational expert did not include such restrictions. Since the RFC must be re-examined, the ALJ shall also reformulate his question to the expert to accurately reflect Claimant's restrictions.

Claimant also contends the ALJ should have considered her reduced GAF. This issue alone does not warrant reversal. However, on remand, he should address Claimant's low GAF scores and the effect the same may have on her overall RFC.

Claimant creates a separate issue on addressing the opinion evidence. This issue is subsumed into the prior argument and need not be repeated.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate

review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE